UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JIMMY LEYTHAM,<br><br>            Petitioner,<br><br>  v.<br><br>CHAD PAGE,<br><br>            Respondent. | Case No. 1:16-cv-00437-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is an Amended Petition for Writ of Habeas Corpus filed by Idaho prisoner Jimmy Leytham ("Petitioner"), challenging his Ada County convictions of forgery and criminal possession of a financial transaction card ("FTC"). The Court previously dismissed, as procedurally defaulted, Claim 1, part of Claim 2 (as it pertains to Petitioner's FTC conviction), Claim 3, and Claim 4. (Dkt. 44.) Petitioner's only remaining claim—Claim 2, as it pertains to Petitioner's forgery conviction—is now fully briefed and ripe for adjudication on the merits. (Dkt. 49, 51, 53.)

Claim 2 asserts that, as a result of inadequate investigation, preparation, and explanation of trial strategy, Petitioner's trial counsel assured Petitioner "that he would receive probation by pleading guilty." (Dkt. 8 at 14.) Petitioner claims that this conduct violated his Sixth Amendment right to the effective assistance of counsel and rendered Petitioner's guilty plea involuntary.

**MEMORANDUM DECISION AND ORDER - 1**

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 18.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief on the remaining portion of Claim 2 and dismissing this case with prejudice.

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted when a federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination

of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's

application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the

**MEMORANDUM DECISION AND ORDER - 4**

underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of Supreme

**MEMORANDUM DECISION AND ORDER - 5**

Court precedent or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778.

When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167-68. Conversely, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

## DISCUSSION

Petitioner asserts in Claim 2 that his trial counsel rendered ineffective assistance by assuring Petitioner he would receive probation if he pleaded guilty, which caused Petitioner to enter an involuntary guilty plea.

### 1. Clearly-Established Law Regarding Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel ("IAC") claims was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting IAC must show

**MEMORANDUM DECISION AND ORDER - 6**

that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A petitioner must establish both deficient performance and prejudice to prove an IAC claim. *Id.* at 697. On habeas review, the Court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 7**

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. That is, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense.

The Supreme Court has explained that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage," because "[f]ailure to respect the latitude *Strickland* requires can create at least two problems in the plea context":

> First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from

**MEMORANDUM DECISION AND ORDER - 8**

> immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.
>
> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture." Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo v. Moore*, 562 U.S. 115, 125 (2011) (internal citations omitted).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual

**MEMORANDUM DECISION AND ORDER - 9**

> findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96.

To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112. And to show prejudice from counsel's performance in a case where, as here, the petitioner pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under

**MEMORANDUM DECISION AND ORDER - 10**

> AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an
> incorrect application of federal law." *Williams*, *supra*, at 410,
> 120 S. Ct. 1495. A state court must be granted a deference
> and latitude that are not in operation when the case involves
> review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating an IAC claim under § 2254(d), this Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190 (internal quotation marks omitted).

## 2.   Relevant Facts

In exchange for Petitioner's guilty plea to forgery and criminal possession of an FTC, the state agreed to dismiss the remaining charges in those two cases, to refrain from pursuing new charges against Petitioner, and to refrain from prosecuting Petitioner as a persistent violator. (State's Lodging A-3 at 5-8.) The state agreed to limit its sentencing recommendation to ten years in prison, and Petitioner agreed to pay restitution. (*Id*. at 6-10.)

At the change-of-plea hearing, the Court questioned Petitioner extensively about his understanding of the plea agreement and about any promises made to Petitioner regarding his potential sentence:

> **Q.** Now, you understand I'm not required to follow this plea agreement?
>
> **A.** Yes, ma'am, I understand.
>
> **Q.** What that means is I can actually give you a 14-year prison sentence in the forgery case and a five-year prison sentence in the financial transaction card case and I can run

them consecutive to each other for a total of 19 years without the possibility of parole. Do you understand that?

**A.** Yes, ma'am.

**Q.** And I'm not required to follow recommendations of either counsel. Do you understand that?

**A.** Yes, ma'am.

**Q.** Now, you understand that you're agreeing to pay restitution in all of these cases including the dismissed cases. Do you understand that?

**A.** Yes, ma'am.

**Q.** And you're also agreeing to pay restitution in the case that's the DR [Departmental Report] case, 2014-411861. Do you understand that?

**A.** Which one would that be, ma'am?

**Q.** That's the one that—it's the one that they're not going to file on.

**A.** Yes.

**Q.** All right. And you understand again that because these are two crimes that I can run them consecutive to each other?

**A.** Yes, ma'am.

**Q.** You also understand that if I don't follow this plea agreement, you will not be allowed to withdraw your guilty plea? Do you understand that?

**A.** I understand.

**Q.** You understand the only person who can make any promises to you as to what's going to happen at sentencing is me?

**A.** Yes, ma'am.

**Q.** Have I made you any promises?

**MEMORANDUM DECISION AND ORDER - 12**

**A.** No, ma'am.

**Q.** Have you reviewed the evidence that was provided to your attorney provided during discovery?

**A.** Yes, I have.

**Q.** Is there anything that your attorney has—that you've asked your attorney to do that he has not done?

**A.** No, ma'am.

**Q.** And have you told your attorney everything that you know about these crimes?

**A.** Yes, ma'am.

**Q.** Have you had enough time to talk to your attorney?

**A.** Yes, ma'am.

…

**Q.** Are there any promises that have been made to you that influenced your decision to plead guilty—

**A.** No, ma'am.

**Q.** —besides the plea agreement?

**A.** No.

…

**Q.** And you understand again about the requirement that you're going to have to pay restitution to your victims?

**A.** Yes, ma'am.

**Q.** And I noticed that you crossed yes and then it looks like over no it says—you wrote L—it looks like a signature, but I'm not positive. It looks like an initial. But you do understand that you have to pay restitution to the victims?

**A.** Yes, ma'am.

**MEMORANDUM DECISION AND ORDER - 13**

> **Q.** You understand that?
>
> **A.** Yes.
>
> …
>
> **Q.** Has anyone including law enforcement or even your attorney threatened you in any way to get you to enter this plea against your will?
>
> **A.** No, ma'am.
>
> **Q.** Has anyone promised you a special sentence, reward or favorable treatment with regard to your decision to enter a guilty plea?
>
> **A.** No, ma'am.
>
> …
>
> **Q.** Are you satisfied with your attorney?
>
> **A.** Yes, ma'am.

(*Id*. at 24-31.)

At sentencing, the court once again described the plea agreement as providing for a recommendation by the state of no more than ten years' imprisonment and requiring restitution in each of the three cases at issue (the two cases in which Petitioner pleaded guilty and the third case that the state did not pursue). The prosecutor described the restitution award as consisting of $202.75 in the FTC case, an undisclosed amount that already had been paid to the victim in the forgery case, and $55,331.92 in the third case that was not pursued. (*Id*. at 37-38.) Petitioner, through counsel, agreed to these restitution amounts. (*Id*. at 38.)

After argument, Petitioner declined the trial judge's invitation to make a statement or present any additional information. (*Id*. at 58.) The court then imposed a sentence of ten years in prison, with five years fixed, on the forgery conviction and ordered Petitioner to pay restitution in the amounts of $202.75 and $55,331.92. (*Id*. at 64-66.)

3. **Petitioner Is Not Entitled to Relief on the Remaining Portion of Claim 2**

Petitioner asserts in Claim 2 that trial counsel rendered ineffective assistance with respect to Petitioner's guilty plea. According to Petitioner, his attorney promised him he would receive probation, and, if counsel had not done so, Petitioner would not have pleaded guilty. (Dkt 8 at 14 (citing *Strickland v. Washington* and *Hill v. Lockhart*).)

The Idaho Court of Appeals rejected Claim 2, finding that, even assuming Petitioner's trial counsel promised him he would receive probation, Petitioner "was made aware by the district court that no promises were enforceable." (State's Lodging D-4 at 6.) That is, the trial court's explanation "cured" any error, and Petitioner could not show prejudice from any promise of probation. (*Id*.) The appellate court also found that the trial court clearly advised Petitioner he would be required to pay restitution and that Petitioner agreed to the amount of the restitution awards; because Petitioner declined to make a statement at sentencing after his counsel agreed to the amount of restitution, Petitioner's "allegations that he was misinformed by his counsel are clearly disproven by the record." (*Id*. at 7.)

The Idaho Court of Appeals' application of *Strickland* to Claim 2 was reasonable under AEDPA, as was the court's factual finding that Petitioner knew, prior to pleading guilty, that he was not guaranteed probation and that he would be required to pay

**MEMORANDUM DECISION AND ORDER - 15**

restitution. *See* 28 U.S.C. § 2254(d). Petitioner's own statements at the plea hearing, as well as his counsel's agreement to the amount of restitution at the sentencing hearing (which Petitioner did not contest), clearly support the state court's decision. Because Petitioner knew that his maximum possible sentence was nineteen years' imprisonment and that no promises were enforceable, he cannot establish that, absent counsel's alleged promise of probation, he would have insisted on going to trial. *See Hill*, 474 U.S. at 59. Therefore, Petitioner is not entitled to relief on Claim 2.

## CONCLUSION

For the foregoing reasons, the Court will deny the remaining portion of Claim 2 on the merits.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion to Encourage State to Get Records Released (Dkt. 50) is DENIED.

2. The remaining portion of Claim 2 of the Amended Petition for Writ of Habeas Corpus (Dkt. 8) is DENIED. Because all other claims have already been dismissed, this entire action is DISMISSED with prejudice.

3. Petitioner's Motion to Object to Dismissal (Dkt. 51) is DENIED.

4. Respondent's Motion to Strike (Dkt. 47) is DENIED AS MOOT.

5. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: July 29, 2019

_____
Honorable Candy W. Dale
United States Magistrate Judge